633 So.2d 234 (1993)
PISON, INCORPORATED
v.
Lettie B. JACKSON.
CA 92 1917.
Court of Appeal of Louisiana, First Circuit.
November 24, 1993.
R.J. Calongne, Jr., Baton Rouge, for appellee plaintiff, Pison, Inc.
R. Ryland Percy, III, Percy, Pujol, & Poirrier, Gonzales, for appellant defendant Lettie B. Jackson.
Before EDWARDS, CRAIN and LEBLANC, JJ.
EDWARDS, Judge.
Plaintiff, Pison, Inc. (Pison), filed a boundary action against the defendant, Lettie B. Jackson.[1] Mrs. Jackson reconvened and claimed that the boundary should be set according to limits established by her possession of the land resulting in acquisitive prescription of thirty years. The different boundary claims of the parties put in dispute the ownership of a strip of land between the two contiguous properties. The trial court found that Mrs. Jackson had acknowledged the ownership of the land of Pison, or its predecessors in title, in a 1949 affidavit, a 1966 quitclaim, and verbally. The trial court held that Pison proved their title to the land and that Mrs. Jackson had not met her burden of proof to show thirty years of uninterrupted possession of the disputed tract. In the same proceeding, the trial court voided a 1966 exchange between Pison and Mrs. Jackson of land not in the disputed area for failure of consideration and gave limited effect to a quitclaim, covering the disputed property, signed by Mrs. Jackson on the *235 same day as the act of exchange. For these reasons, the trial court set the boundary between the Pison and Jackson property at the point prayed for by Pison. Mrs. Jackson appealed. We disagree with the trial court's finding of acknowledgment of ownership in the affidavit and quitclaim, but we find that the result is correct and we affirm the judgment on other grounds.
Mrs. Jackson acquired a parcel of land from her vendor, James Brown, in 1945. Mrs. Jackson shared a common boundary with Mr. Brown on the eastern side of Mrs. Jackson's property. In 1949, based on a survey made by Henry Kleinpeter, Mrs. Jackson, her vendor, James Brown, and Philip Brown, a landholder west of Mrs. Jackson, executed an affidavit fixing their respective boundaries as shown in the Kleinpeter survey. The survey, however, was not in agreement with the titles to the various properties recorded in the parish conveyance office.
In 1957, James Brown sold a parcel of land, including in its description the strip of land in dispute here, to Joseph Ragusa. The administrator of the Ragusa succession sold the same parcel to Pison in 1966. These acts of sale were recorded in the parish conveyance office.
An act of exchange and a quitclaim executed between Pison and Mrs. Jackson in 1966 were also introduced into evidence. In the act of exchange, Mrs. Jackson traded her property fronting on the west side of the Airline Highway for the ownership of a house that Pison agreed to move to her remaining property on the eastern side of Airline and renovate. The quitclaim, covering several described pieces of property, including the disputed strip, which lies east of the house location proposed by Pison, was executed the same day as the exchange. Mrs. Jackson made her mark on both documents.
Pison argued that these were valid transfers. Mrs. Jackson argued at trial that Pison did not fulfill the agreement to move and renovate the house; therefore, the exchange was void for failure of consideration. Because the quitclaim was in part based on this invalid exchange and Mrs. Jackson, who could not read or write, did not fully understand the extent of the property she was quitclaiming, Mrs. Jackson argued that the quitclaim was also invalid and not a transfer of the disputed land to Pison. The trial court voided the exchange and gave only limited effect to the quitclaim in his determination that Mrs. Jackson had acknowledged the ownership of Pison and interrupted prescription. Pison did not appeal the judgment.
In 1971, Pison, alleging ownership of the property in question, filed for a preliminary injunction enjoining Mrs. Jackson from entering the disputed strip of land. Mrs. Jackson reconvened alleging possession and asserting a disturbance in that possession. In 1973, the reconventional demand was dismissed without prejudice and the parties agreed to a stipulated judgment enjoining Mrs. Jackson from entering the property. The testimony of acts of possession after the interruption of prescription caused by Pison's filing for a preliminary injunction, and subsequent stipulated judgment, were few, not specific to the land in dispute, and equivocal, at best. When a possessor has no title, his possession must be proved "`inch by inch.'" Chaney v. State Mineral Board, 444 So.2d 105, 109 (La.1983), citing City of New Orleans v. New Orleans Canal, Inc., 412 So.2d 975, 982 (La.1982) (On Rehearing).
The first boundary action was filed by Pison in 1982 against Mrs. Jackson. A judgment fixing the boundary by title, i.e., at the point claimed by Pison, was obtained in 1984. The 1984 judgment was annulled in 1988, apparently for a defect in service. The present boundary action was filed on September 26, 1989. Mrs. Jackson answered and filed a reconventional demand claiming possession of the land for over thirty years and that the boundary should be set according to that possession.
Plaintiff proved that it acquired title to the disputed strip of land by act of sale recorded in the parish conveyance office and that the chain of title descended from the parties' common ancestor, James Brown. The burden on the reconventional demand to show that Mrs. Jackson had possessed the land in question without interruption for thirty years and, thus, had acquired the land through thirty year acquisitive prescription, *236 rested on Mrs. Jackson. See Carroll v. Holton, 472 So.2d 212, 215 (La.App. 1st Cir. 1985).
Under Civil Code article 792, governing boundary actions, the trial "court shall fix the boundary according to the ownership of the parties; if neither party proves ownership, the boundary shall be fixed according to limits established by possession." "When one party relies on title and the other party on acquisitive prescription, the party relying on title will prevail unless the adversary establishes his ownership by acquisitive prescription." A.N. Yiannopoulos, Property § 288, at 560, in 2 Louisiana Civil Law Treatise (3d ed. 1991). The trial court, after considering the evidence, "shall render judgment fixing the boundary between the contiguous lands in accordance with the ownership or possession of the parties." LSA-C.C.P. art. 3693.
The applicable articles on prescription, in effect before 1982 and at the time of the filing of the suit for an injunction by Pison against Mrs. Jackson, are cited below with reference to the successor articles enacted after the 1982 revision.[2]
Art. 3499 (replaced by art. 3486) The ownership of immovables is prescribed for by thirty years without any need of title or possession in good faith.
Art. 3500 (replaced by art. 3435 and 3436) The possession on which this prescription is founded must be continuous and uninterrupted during all the time....
Art. 3518 (replaced by art. 3462) A legal interruption takes place, when the possessor has been cited to appear before a court of justice, on account either of the ownership or of the possession; and the prescription is interrupted by such demand, whether the suit has been brought before a court of competent jurisdiction or not. The provisions of this article likewise apply to actions ex delicto, heretofore or hereafter filed, in a United States District Court of America, when and if said court holds it is not a court of competent jurisdiction.
Art. 3519 (replaced by art. 3463) If the plaintiff in this case, after having made his demand, abandons or discontinues it, the interruption is considered as never having happened.
Acquisitive prescription is interrupted by acknowledgment, by filing suit, or when possession is lost. See LSA-C.C. arts. 3462, 3464 (based on old article 3520), and 3465 (based in part on old article 3517 and on new articles 3433 & 3434); A.N. Yiannopoulos, Property § 313, at 606 n. 16, in 2 Louisiana Civil Law Treatise (3d ed. 1991); Louisiana Civil Code, Expose de Motifs, Title XXIV. Prescription, Chapter 2. Interruption and Suspension of Prescription (West Pocket Part 1993); Marjorie N. Neufeld, Comment, Prescription and Peremption-The 1982 Revision of the Louisiana Civil Code, 58 Tul. L.Rev. 593, 606 (1983). The owner's filing of a suit against the possessor interrupts prescription and serves as a continuing interruption while the suit is pending. Jones v. Skannal, 384 So.2d 492, 493 (La.App. 2d Cir.1980); see LSA-C.C. art. 3463 (West 1993). When prescription is interrupted, the time that has run is wiped away. See LSA-C.C. art. 3466 (West 1993) & comment (b); Neufeld, supra, at 608. An exception is made in present Civil Code article 3463, based on old article 3519 above, when the owner abandons, voluntarily dismisses, or fails to prosecute the suit against the possessor at trial.[3]
*237 Mrs. Jackson claimed that she possessed the disputed land as owner after the Kleinpeter survey in 1949 and the affidavit realigning the boundaries of the signors executed that same year.[4] Pison filed the suit for an injunction in 1971 and judgment was rendered in 1973. Using the dates 1949 to 1971, a time period of less than thirty years, acquisitive prescription based on thirty years of possession was not proved and we can find no basis for an exception allowing the prescriptive time to continue to run past 1971. Pison did not abandon the suit, and was successful in gaining the injunction. Thus, prescription ceased to run and any time that had run, was erased. See LSA-C.C. art. 3466 (West 1993).
The defendant failed to meet her burden of proof to show ownership by acquisitive prescription through thirty years of uninterrupted possession of the disputed property. Pison established its title to the land and the trial court was correct in fixing the boundary according to ownership.
For the foregoing reasons, we affirm the judgment of the trial court. The costs of this appeal are assessed to appellant, Mrs. Jackson.
AFFIRMED.
NOTES
[1] Before trial, Lettie B. Jackson died. On the first day of the trial, her heirs were substituted as party defendants, without objection. However, the substituted heirs were never named in the suit heading. For clarity, we will continue to address Mrs. Jackson as defendant.
[2] The 1982 revision of the Civil Code articles on prescription changed the numbers and some of the wording of the old articles. However, the successor articles to the articles reviewed here did not change the law in effect before 1982. See Marjorie N. Neufeld, Comment, Prescription and Peremption-The 1982 Revision of the Louisiana Civil Code, 58 Tul.L.Rev. 593 (1983).
[3] Another exception is made in new article 3465, based in part on old article 3517, when a possessor, who has abandoned or lost possession through eviction regains possession within one year of the interruption of the running of acquisitive prescription. See LSA-C.C. arts. 3433, 3434, and 3465, comments (a) & (b) (West 1993); A.N. Yiannopoulos, Property § 337, at 655 n. 12, in 2 Louisiana Civil Law Treatise (3d ed. 1991). The interruption, in those cases, "is considered never to have occurred...." LSA-C.C. art. 3465. See A.N. Yiannopoulos, Property § 337, at 655; Neufeld, supra, at 612 (discusses difference between loss of possession after abandonment or eviction and loss of right to possess). The defendant made no claim and the record does not contain evidence of specific acts of possession over the disputed property sufficient to support any argument based on eviction or abandonment and reacquisition of possession within one year of the interruption.
[4] Defendant did not assert that the affidavit was recorded in the conveyance records of the parish or the plea of ten year acquisitive prescription.