657 So.2d 537 (1995)
SETTOON MARINE, INC.
v.
GREAT LAKES DREDGE & DOCK COMPANY.
No. 95-CA-0046.
Court of Appeal of Louisiana, Fourth Circuit.
June 7, 1995.
*538 MacAllynn J. Achee, Baton Rouge, for plaintiff/appellant.
W. Christopher Beary and Gene R. Smith, Deutsch, Kerrigan & Stiles, New Orleans, for defendant/appellee.
Before SCHOTT, C.J., and CIACCIO and Robert L. LOBRANO, JJ.
LOBRANO, Judge.
This appeal arises from a judgment granting Great Lakes Dredge and Dock Company's Motion for Involuntary Dismissal of part of Settoon Marine Inc.'s open account claim in the amount of $15,437.50.[1]

FACTS AND PROCEDURAL HISTORY:
On September 2, 1987, Settoon filed a Petition against Great Lakes to collect unpaid invoices dated from July 31, 1983 through November 14, 1985. The invoices represented services rendered for marine transportation and a barge rental. The Petition was styled as a "Suit on Open Account."
On April 13, 1994, Great Lakes filed a Motion for Summary Judgment alleging that six of the ten invoices had prescribed. The trial court referred that issue to the merits.
On September 7, 1994, after Settoon presented its case, Great Lakes moved for an involuntary dismissal of the six invoices asserting that those invoices had prescribed prior to suit being filed and that Settoon had not proved any acknowledgment which *539 would have interrupted prescription.[2] The trial court granted the motion and dismissed Settoon's claim as to those invoices.
Settoon argues two assignments of error in the instant appeal. First, it argues the trial court erred in its determination that there was no acknowledgement by Great Lakes so as to interrupt prescription.[3] Second, and alternatively, it argues that the maritime doctrine of laches, and not Louisiana's three year prescriptive period, is applicable.

ASSIGNMENT OF ERROR 1:
Liberative prescription is a method of barring actions because of inaction for a period of time. La.C.C. Art. 3447. With respect to a claim on an open account, the prescriptive period is three years. La.C.C. art. 3494(4). However, prescription may be interrupted by filing suit in a proper court within the prescriptive period, or by acknowledgement, either formal or informal, by the debtor. La.C.C. Arts. 3462, 3464. Generally, if prescription is interrupted the prescriptive period begins to run anew from the last day of interruption. La.C.C. art. 3466. If the interruption of prescription occurs because of suit being filed, the interruption continues as long as the suit is pending. La.C.C. art. 3463.
The six invoices which are the subject of this appeal are dated July 3, 1983 through May 31, 1984. Suit was filed September 2, 1987, and, thus the debts represented by those invoices were prescribed on their face. When a complaint on an open account is prescribed on its face, the burden of proof is on the plaintiff to prove an acknowledgement occurred. Lima v. Schmidt, 595 So.2d 624, 628 (La.1992). An acknowledgement sufficient to interrupt prescription may be made verbally, in writing, by partial payment, by payment of interest or by pledge, or in other ways; or it may be inferred from specific facts and circumstances. Schmidt, supra, at 632.
Settoon argues that acknowledgement by Great Lakes occurred both by the pleadings it filed in response to the the instant suit, and by verbal conversations which occurred prior to the filing of suit. We disagree.
It is well settled that interruption of prescription can only occur during the prescriptive period. That is, once prescription has accrued, it can no longer be interrupted either by acknowledgement or suit. La.C.C. art. 3463; Official Comment (c) to La.C.C. art. 3449. However, once prescription accrues, it may be renounced by those in whose favor it has advantaged. La.C.C. art. 3449; Lima v. Schmidt, supra. In the instant case, there can be no interruption of prescription by Great Lakes after Settoon filed suit since prescription had already accrued. Settoon's contrary argument with respect to Great Lake's pleadings is really one of renunciation, not interruption. Be that as it may, we find that the pleadings filed by Great Lakes do not constitute a renunciation.
"Our courts have consistently held that renunciation must be `clear, direct and absolute and manifested by words or actions of the party in whose favor prescription has run.'" Lima v. Schmidt, supra at 631. "Renunciation requires a new promise to pay the debt, as `[a] new obligation binding on the debtor is created when a promise to pay is made after prescription has accrued.'" Id. quoting Bordelon's Inc. v. Littell, 490 So.2d 779, 781 (La.App. 3rd Cir.1986).
We have reviewed the various instances cited by Settoon in which it asserts an "acknowledgement" occurred in the pleadings and find there was no renunciation of the debt by Great Lakes. The admission by Great Lakes that services were rendered on the dates specified in the six invoices do not rise to the level of a new promise to pay. Had prescription not accrued when those admissions were made, they would have constituted an acknowledgement. However, *540 they do not constitute a renunciation. Great Lakes did not create a new obligation, nor did it specifically renounce the benefits of accrued prescription.

VERBAL ACKNOWLEDGEMENT
Settoon further argues that verbal acknowledgement, sufficient to interruption prescription, was established by the uncontradicted testimony of its office manager, Clyde Perera. That testimony, asserts Settoon, was to the effect that throughout the prescriptive period, Timothy Berke, Great Lakes' employee, acknowledged the debt in numerous telephone conversations which allegedly occurred from November, 1985, through August, 1987.
It is obvious the trial judge rejected Perera's testimony in this regard and concluded there was no acknowledgement by Great Lakes. The credibility of witnesses is for the trier of fact to determine. This is not only based on the fact finder's better capacity to evaluate live witnesses, but also upon the proper allocation of trial and appellate functions between the respective courts. Dominici v. Wal-Mart Stores, Inc., 606 So.2d 555, 560 (La.App. 4th Cir.1992). The trier of fact may accept or reject any part of a witness' testimony. Id. After review of Perara's testimony, we cannot say the trial judge was clearly wrong in her credibility call in this instance.
On direct examination, Perera testified that one of his duties as office manager was the handling of accounts receivable. He stated that he made demand on Great Lakes to pay the amounts represented by the invoices on numerous occasions after they had become due. He testified that these demands were in the form of "ongoing" telephone conversations with Timothy Burke from the time the invoices became due, during which Burke continuously assured Perera that the invoices would be paid. He did not recall the last time he spoke to Burke.
On cross-examination, Perera testified that he was the office manager for all the companies owned by Settoon. Those companies were, Fred Settoon, Inc., Settoon Construction, Inc., 2S Construction, Inc., and Settoon Marine, Inc.
Perera stated that he sent letters requesting amounts due from Great Lakes on behalf of the other Settoon companies. However, he could not remember nor could he produce written evidence of any letters sent on behalf of Settoon Marine, Inc. for the amounts owed. His testimony in this regard is as follows:
Q. You wrote a letter to Great Lakes; as a matter of fact, you wrote a couple of the letters to Great Lakes as representatives for other companies during this period of time, transmitting invoices back and forth, requesting collection of invoices, things of that nature, did you not?
A. I think I did.
Q. I'm going to show you a letter that has your name and ask if you recognize that as your signature?
A. Yes, sir, that's my signature.
Q. This is a letter that you had written to Great Lakes requesting a revision on an invoice, is it not?
A. Yes sir.
Q. This open communication existed, yet you wrote no letter to Great Lakes requesting payments on these invoices in the three to four years that Settoon Marine was owed this outstanding balance?
A. I don't know if I did or not, sir.
Q. Do you recall reviewing a deposition subpoena in this case prior to you giving a deposition and also the Settoon Marine deposition?
A. Yes, sir, I do.
Q. In that deposition subpoena, it was requested that you produce any evidence of communication with respect to these receivables, was it not?
A. Yes, sir, I think it was.
Q. And none was produced at that time, was it not?
A. I didn't find any.
Q. Okay, you have no letter in fact sent to Great Lakes for collection referring to or acknowledging any of the alleged phone conversations that took place, do you, sir?
A. Not that I can recall.

*541 Q. You have no letter from Great Lakes to Settoon Marine acknowledging that they will pay these debts, do you sir?
A. No, sir, I don't think so.
Q. You have no notations in a file from conversations which you allegedly had with Tim Burke of Great Lakes, do you, sir?
A. No, sir.
The most questionable testimony of Perera was in reference to Fred Settoon's daughter, Cheryl Settoon Daigle. Perera testified that Daigle was also an office manager. Perera was questioned regarding Daigle's deposition testimony that it was her duty and her duty alone to collect on past due invoices. In attempting to explain the inconsistency, Perera stated:
Q. Okay, you testified a minute ago that it was your duty to collect on these invoices. Cheryl Daigle also testified in her deposition as office manager for Settoon Marine that it was her duty to collect on these invoices and that no one else had that duty. How do you explain that inconsistency?
A. Well, what she would do, she would make phone calls and she would handle the collection of the money until it got to a certain point in time or the age of the invoices are starting to get, are beginning to get real old, but then she turned it over to me and I would handle it from that point forward.
Q. So she made the phone calls to Great Lakes in this case?
A. That, you are going to have to ask her, sir. I don't know.
Q. I thought you just testified that you made the phone calls to Great Lakes and talked to Tim Burke, didn't you.
A. I made many phone calls to Tim Burke.
Q. But just now you testified that Cheryl was in charge of making those phone calls and I would have to ask her if the calls were made?
A. I don't think I said that. If I did, I misunderstood your question.
The issue of whether Great Lakes verbally acknowledged the debt, rests entirely on the trial court's acceptance or rejection of Perera's testimony. No corroborating documentary evidence was presented. Thus, we cannot say the judge committed manifest error by rejecting that testimony and concluding that there was no acknowledgement by Great Lakes sufficient to interrupt prescription.
Settoon further argues that it was error for the trial court to grant Great Lakes' Motion for Involuntary Dismissal because this procedural motion does not apply to a question of prescription.[4] In addition, Settoon asserts that Great Lakes never filed an exception of prescription.
The plea of prescription is properly raised via a peremptory exception which must be specifically pleaded. The Court cannot supply the objection on its own. La. C.C.Pro. Art. 927. The peremptory exception may be pleaded at any stage of the proceeding in the trial court prior to a submission of the case for a decision. La. C.C.Pro. Art. 928(B).
While we agree that a Motion for Involuntary Dismissal is generally not the proper procedural mechanism to plead prescription, the procedural history of this case suggests there was no error in its use. On April 13, 1994, Great Lakes filed a "Motion for Partial Summary Judgment" wherein it argued prescription as the basis for its motion. The court referred the matter to the merits. At the close of trial, counsel for Great Lakes and Settoon again argued the issue of prescription, albeit in the procedural form of a Motion for Involuntary Dismissal.
Thus, in view of the fact that the issue of prescription was before the trial court and *542 was argued by both parties, we find no error in granting the involuntary dismissal on those grounds. See, Metropolitan Erection Company, Inc. v. Landis Construction Company, Inc., 613 So.2d 1147 (La.App. 5th Cir.1993), reversed on other grounds, 627 So.2d 144 (La.1994); See also, Scott v. Butler Brothers Furniture Co. of Baker, Inc., 315 So.2d 809 (La.App. 1st Cir.1975).
This assignment of error is without merit.

ASSIGNMENT OF ERROR 2:
Settoon asserts that the transportation services rendered to Great Lakes constitutes a maritime contract, and, as such, it was error for the trial court to not recognize that the appropriate limitation period is governed by the doctrine of laches. We disagree.
Pretermitting the issue of whether Settoon's action sounds in admiralty or state law, we conclude that Settoon has failed to carry its burden of proof as required by maritime law to defeat a laches defense.
In Mecom v. Levingston Shipbuilding Company, 622 F.2d 1209, 1215 (5th Cir.1980), the Federal Fifth Circuit stated:
"Laches is an equitable doctrine that, if proved, is a complete defense to an action irrespective of whether the analogous state statute of limitation has run. As interpreted by this court, the analogy rule serves primarily to determine where rests the burden of proof. `[W]hen a plaintiff files a claim in admiralty within the analogous statutory period, defendant must show inexcusable delay and resulting prejudice in order to establish a laches defense.' (citations omitted). Where, as here, the statute has run prior to instituting suit, the plaintiff must prove either absence of prejudice or excuse for delay to repel a claim of laches. (citation omitted)." See also, Deutsche Shell Tanker-Gesellschaft v. Placid Refining Co., 767 F.Supp. 762, 781 (E.D.La.1991), aff'd in 993 F.2d 466 (5th Cir.1993).
Because it filed suit subsequent to the running of the analogous three year prescriptive period, Settoon is required to prove excuse for its delay and that Great Lakes was not prejudiced. Settoon has not alleged nor introduced any evidence of either requirement and thus could not defeat a laches defense by Great Lakes.
This assignment of error is without merit.
For the foregoing reasons, the judgment of the trial court is affirmed.
AFFIRMED.
NOTES
[1] Settoon was awarded judgment for the balance of their open account claim. That judgment has not been appealed.
[2] The first six invoices which were the subject matter of Great Lakes motion are:

Invoice No. Date Amount
3-6884 7/31/83 4990.00
3-3964 8/31/83 2275.00
3-6957 8/31/83 1855.00
3-6963 8/31/83 2437.50
3-7018 9/30/83 3360.00
3-7619 5/31/84 520.00
 _________
 15,437.50

[3] In connection with this argument, Settoon also argues prescription was not properly raised via a peremptory exception.
[4] La.Code of Civil Procedure Art. 1672 "Involuntary dismissal" provides:

* * *
B. In an action tried by the court without a jury, after the plaintiff has completed the presentation of his evidence, any party, without waiving his right to offer evidence in the event the motion is not granted, may move for a dismissal of the action as to him on the ground that upon the facts and law, the plaintiff has shown no right to relief. The court may then determine the facts and render judgment against the plaintiff and in favor of the moving party or may decline to render any judgment until the close of all the evidence.