JiPOUCET, Chief Judge.
Plaintiffs/Appellants, Herbert Fontenot and John Hurdley Fontenot, appeal a judgment of the trial court finding Defendant, Joseph Hillary Duplechain (Hillary), the owner, by way of thirty years acquisitive prescription, of the following piece of land in Allen Parish:
BEGINNING AT THE SOUTHWEST CORNER OF THE SOUTHEAST QUARTER OF THE NORTHWEST QUARTER OF SECTION 7, TOWNSHIP 5 SOUTH, RANGE 2 WEST, ALLEN PARISH, LOUISIANA, THENCE GO SOUTH 89 DEGREES 42 MINUTES 06 SECONDS EAST 1,340.0 FEET; THENCE GO NORTH ALONG THE EAST LINE OF SAID TRACT 53 FEET; THENCE GO NORTH 89 DEGREES 34 MINUTES *564 15 SECONDS WEST APPROXIMATELY 1,840.0 FEET; AND THENCE GO SOUTH ALONG THE WEST LINE OF SAID QUARTER SECTION 57.6 FEET TO THE POINT OF BEGINNING.
For the following reason, we affirm the judgment of the trial court.
FACTS
This appeal arises out of a petitory action filed by Plaintiffs, Herbert Fontenot and John Hurdley Fontenot, who claim ownership of the property in dispute by way of a just and legal title from the property’s previous owner, Arlington Manuel. The Defendant, Hillary Duplechain, answered the suit denying Plaintiffs’ claim and, as Plaintiff-in-Reconvention, argued that he was the rightful owner by the way of thirty years acquisitive prescription by Plaintiff-in-Reconvention and his ancestors in title.
The trial judge found that Plaintiffs, Herbert Fontenot and John Hurdley Fon-tenot, proved an unbroken chain of title to the land in dispute, but that Plaintiff-in-Reconvention and his ancestors in title had been “in continuous, uninterrupted, and peaceable possession of the strip of land at issue in excess of thirty years” and thus, Hillary Duplechain is the owner via thirty years acquisitive prescription.
| ¡¿Hillary Duplechain moved onto the property just south of the disputed strip of land in 1964. At that time the disputed strip of land was enclosed by a fence running east to west and made up part of the property onto which Mr. Duplechain moved. In 1964 the land was owned by Eual Duplechain, and after his death, in 1975, Orline Duplechain, the widow of Eual Duplechain and her son donated to Hillary Duplechain the land on which he was living and farming. Mr. Duplechain has been continuously on the property since 1964. He testified that he had grown up the immediate area, had been familiar with the land for a number of years and that the east-west fence had been there for as long as he could remember.
Herbert Lejeune, Hillary Duplechain’s nephew, who helped Mr. Duplechain build his house, testified that the “old fence” was there at that time the house was built and, to best of his recollection, it was never moved. Donald Duplechain, the grandson of Eual Duplechain, testified that he has known Hillary Duplechain all of his life and that the east-west fence had been on the disputed property as far back as he could remember. Donald stated that “I remember the fence and the property being the same. Nothing has changed as long as I remember the property.” He further stated that the “old fence” had always been in the same place and no one ever moved it south of its original position.
Even Mr. Arlington Manuel, Plaintiffs’ ancestor in title, who acquired the property in 1971, testified that the southern boundary of his property was marked by a fence which had been there for “thirty-five or forty years ... [o]r maybe more.” Mr. Manuel went on to state that “it’s been there since the forty acres was there. It was farmed as forty acres and that fence has been there since I know something [sic].” However, Mr. Manuel went on to contradict himself, stating that sometime between |swhen he acquired the property in 1971 and 1975 the fence was moved some eighty feet north. Matt Manuel’s testimony supported that of his brother, Arlington. However, Matt Manuel was unsure as to the type of fence that was used and could not remember Hillary Du-plechain having a fence for a garden. The Manuels’ testimony was contradicted by Hillary Duplechain who testified that he and Arlington Manuel rebuilt the “old fence” in its original location.
*565 Mr. Joseph Hillary Dupleehain built a barn in 1964 or 1965 which abutted the fence. After this dispute began, the barn was torn down. From the record, it appears the barn was torn down around August or September of 1998, after Herbert Fontenot acquired ownership of the land. Herbert Fontenot acquired the land from Arlington Manuel in July of 1998.
There is mention in the record of three fences on the property. As we interpret the testimony of the various witness, it appears that the three fences were the old, original fence, the rebuilt original fence and a fence Hillary Dupleehain built in connection with a garden he maintained next to his barn.
John Hurdley Fontenot testified that he only became familiar with the property in the late 1970’s — about 1978 or 1979. He testified that at that time, “There was a fence line running east and west that was a fairly new fence. It had some age, but it hadn’t been there a long, long period of time.” He stated that Hillary Duple-chain’s barn was on the south side of the fence and that it “[b]utted right up against the fence.” From his testimony, we conclude that the fence he described was the rebuilt original fence. That fence remained until Herbert and John Hurdley Fontenot tore it down and built a new fence some fifty plus feet to the south of the old fence line in 1998.
CLAW AND DISCUSSION
This court has addressed the issue of thirty years acquisitive prescription several times. In Crowell Land & Mineral Corp. v. Funderburk, 96-1123, pp. 3-4 (La. App. 3 Cir. 3/5/97); 692 So.2d 535, 537, writ not considered, 97-0901 (La.5/9/97); 693 So.2d 776, a panel of this court stated:
A titleholder may acquire more land than his title calls for by possessing property beyond his title without interruption and within visible bounds for thirty years. La.Civ.Code art. 794. The titleholder does not need to be in good faith or have just title to acquire the additional land. La.Civ.Code art. 3486. The party asserting acquisitive prescription bears the burden of proving all of the essential facts to support it. Phillips v. Fisher, 93-928 (La.App. 3 Cir. 3/2/94); 634 So.2d 1305, unit denied, 94-0813 (La.5/6/94); 637 So.2d 1056. The adverse possessor must prove that he intended to possess the property as owner. Id. “A possessor will only be considered as possessing that part of property over which he exercises actual, adverse, corporeal possession which is continuous, uninterrupted, peaceable, public, unequivocal, and within visible bounds.” Id. at p. 3; 634 So.2d at 1307; La.Civ.Code art. 3476.
[[Image here]]
Under La.Civ.Code art. 3427, “[o]ne is presumed to intend to possess as owner unless he began to possess the property in the name of and for another.” ... The mere fact that a non-owner has physical possession of the land provides sufficient notice to the record owner and the public at large that a non-owner intends to possess the property for himself as owner. Chevron U.S.A., Inc. v. Landry, 558 So.2d 242 (La.1990).
See also Neely v. Turner, 97-1125 (La. App. 3 Cir. 2/4/98); 707 So.2d 1298, writ granted in part; J. vacated in part on other grounds, 98-1184 (La.6/5/98); 720 So.2d 673; and Thibodeaux v. Chaisson, 98-1307 (La.App. 3 Cir. 3/3/99); 736 So.2d 921.
Furthermore, in Pison, Inc. v. Jackson, 633 So.2d 234, 236 (La.App. 1 Cir.1993)(footnote omitted), our brethren of the first circuit observed:
Acquisitive prescription is interrupted by acknowledgment, by filing suit, or *566 when possession is lost. See LSA-C.C. arts. 3462, 3464 (based on old article 3520), and 3465 (based in part on old article 35171 Band on new articles 3433 & 3434); A.N. Yiannopoulos, Property § 313, at 606 n. 16, in 2 Louisiana Civil Law Treatise (3d ed.1991); Louisiana Civil Code, Expose de Motifs, Title XXIV. Prescription, Chapter 2. Interruption and Suspension of Prescription (West Pocket Part 1993); Marjorie N. Neufeld, Comment, Prescription and Perem/ption-The 1982 Revision of the Louisiana Civil Code, 58 TuLL.Rev. 593, 606 (1983). The owner’s filing of a suit against the possessor interrupts prescription and serves as a continuing interruption while the suit is pending. Jones v. Skannal, 384 So.2d 492, 493 (La.App. 2d Cir.1980); see LSA-C.C. art. 3463 (West 1993). When prescription is interrupted, the time that has run is wiped away. See LSA-C.C. art. 3466 (West 1993) & comment (b); Neufeld, supra, at 608. An exception is made in present Civil Code article 3463, based on old article 3519 above, when the owner abandons, voluntarily dismisses, or fails to prosecute the suit against the possessor at trial.
Finally, our brethren of the fourth circuit have pointed out the following:
It is well settled that interruption of prescription can only occur during the prescriptive period. That is, once prescription has accrued, it can no longer be interrupted either by acknowledgement or suit. La.C.C. art. 3463; Official Comment (c) to La.C.C. art. 3449. However, once prescription accrues, it may be renounced by those in whose favor it has advantaged. La.C.C. art. 3449; Lima v. Schmidt, [595 So.2d 624 (La.1992)].
Settoon Marine, Inc. v. Great Lakes Dredge & Dock, Co., 95-0046, p. 3 (La.App. 4 Cir.6/7/95); 657 So.2d 537, 539.
The trial judge concluded that Hillary Duplechain was the owner of the disputed property by virtue of thirty years acquisitive prescription.
Whether a party has possessed property for purposes of thirty year acquisitive prescription is a factual determination by the trial court and will not be disturbed on appeal unless it is clearly wrong. Romar v. Estate of Gay, 454 So.2d 431 (La.App. 3 Cir.1984). Furthermore, where findings are based on determinations regarding the credibility of witnesses, the trier of fact’s findings demand great deference and are virtually never manifestly erroneous or clearly wrong. Rosell v. ESCO, 549 So.2d 840 (La.1989).
Phillips v. Fisher, 93-928, p. 3 (La.App. 3 Cir. 3/2/94); 634 So.2d 1305, 1307-08, writ denied, 94-0813 (La.5/6/94); 637 So.2d 1056.
IfiOur examination of the record convinces us that the conclusion reached by the trial judge was neither clearly wrong nor manifestly erroneous. The record establishes that the latest date prescription could have started to run in favor of Hillary Duplechain was September 1964. Thus, prescription would have run in his favor as of September 1994. Herbert Fontenot did not acquire his property until July 8, 1998, and did not file the present action until May 25, 2000. By this time, prescription had already run in favor of Defendant/Plaintiff-in-rule, Joseph Hillary Duplechain.
Accordingly, for the reasons stated, the judgment of the trial court is affirmed. All costs of this appeal are assessed *567 against Plaintiffs-Appellants, Herbert Fontenot and John Hurdley Fontenot.
AFFIRMED.