# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## CA 03-1114


## CECIL BROOKING & ELIZABETH BROOKING

## VERSUS

## VICTOR P. VEGAS & BETTY RIVES VEGAS


\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
SEVENTH JUDICIAL DISTRICT COURT
PARISH OF CONCORDIA, NO. 37484
HONORABLE KATHY A. JOHNSON, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

## BILLY HOWARD EZELL
## JUDGE

\*\*\*\*\*\*\*\*\*\*

Court composed of John D. Saunders, Jimmie C. Peters, and Billy Howard Ezell, Judges.

**Saunders, J., concurs and assigns written reasons.**


                                                          **AFFIRMED.**



**Jack Hendrix McLemore , Jr.**
**Attorney at Law**
**200 Advocate Road - B**
**Vidalia, LA 71373**
**(318) 336-9189**
**Counsel for: Defendants/Appellees**
**Victor P. Vegas**
**Betty Rives Vegas**

**Josiah William Seibert  III**
**Attorney at Law**
**P. O. Box 2038**
**Vidalia, LA 71373**
**(318) 336-9676**
**Counsel for: Plaintiffs/Appellants**
**Cecil Brooking**
**Elizabeth Brooking**

**Patrick L. Boothe**
**Smith, Taliaferro, et al**
**P. O. Box 277**
**Jonesville, LA 71343**
**(318) 744-5431**
**Counsel for: Defendants/Appellees**
**Victor P. Vegas**
**Betty Rives Vegas**

**EZELL, JUDGE.**

Elizabeth and Cecil Brooking appeal a trial court finding that Betty and Victor Vegas acquired title to a small strip of land by thirty-years acquisitive prescription. The Brookings argue that their actions interrupted the running of the thirty-years acquisitive prescription.

## FACTS

The property in dispute is located in Concordia Parish, Louisiana. The Brookings and Vegases own contiguous tracts of land which were once both owned by a common ancestor, the Panola Land and Development Company. On February 18, 1971, Panola sold a tract of land known as Lot A to May Beard Caskey.

At the time of the sale to Caskey, a fence was located adjacent to the southwestern boundary of Lot A. However, the location of the fence did not coincide with the southwestern boundary of Lot A.

On January 3, 1977, Cecil Brooking purchased from Panola that portion of land adjacent to Caskey's property. Subsequently, in November 1977, Caskey sold Lot A to the Vegases.

In May 1999, and as a consequence of the development of the Brooking property and the preparation of a new plat of survey, the Vegases and the Brookings agreed that their respective surveyors would make separate determinations as to the boundaries established by their titles. The Brookings employed the firm of Jordan, Kaiser & Sessions, and the Vegases hired Gary Caldwell. Both surveys concluded that the titles established the boundary between the two pieces of land at the same location, which was not along the fence line. No one questions that the deeded line is correct.

As a result of the surveys, the Brookings hired Roger Deville in September of

1

1999, who removed remnants of the fence. On April 9, 2001, the Brookings filed suit to judicially fix the boundary. In their answer, the Vegases alleged acquisitive prescription of the property in question.

A trial was held on April 1, 2002. Reasons for judgment were rendered on March 7, 2003. Amended reasons were rendered on April 4, 2003, and judgment was signed that same day in favor of the Vegases finding that they established title to the disputed property by thirty-years acquisitive prescription. The Brookings appeal that judgment asserting four assignments of error. These errors relate to the trial court's finding that the Vegases had proven title by thirty-years acquisitive prescription.

## ACQUISITIVE PRESCRIPTION

The issues in this case center around the fence on the property that was obviously placed on the property when Panola was the owner of both pieces. While admitting the title ownership of the Brookings to the disputed piece of land, the Vegases alleged that they and their ancestor-in-title, Caskey, possessed the disputed piece of land up to the fence for the purposes of thirty-years acquisitive prescription. They claim that prescription began to run on February 18, 1971, when Caskey acquired the property and began possessing the land up to the fence. The Brookings argue that they interrupted prescription before the thirty-years ran by conducting a survey and removing the visible portions of the fence.

"Acquisitive prescription is a mode of acquiring ownership or other real rights by possession for a period of time." La.Civ.Code art. 3446. "Ownership and other real rights in immovables may be acquired by the prescription of thirty years without the need of just title or possession in good faith." La.Civ.Code art. 3486. "For purposes of acquisitive prescription without title, possession extends only to that which has been actually possessed." La.Civ.Code art. 3487. "Acquisitive prescription is interrupted when possession is lost." La.Civ.Code art. 3465. "The interruption is

2

considered never to have occurred if the possessor recovers possession within one year or if he recovers possession later by virtue of an action brought within the year." *Id.* "Possession is lost when the possessor manifests his intention to abandon it or when he is evicted by another by force or usurpation." La.Civ.Code art. 3433.

"When a party proves acquisitive prescription, the boundary shall be fixed according to limits established by prescription rather than titles." La.Civ.Code art. 794. "If a party and his ancestors in title possessed for thirty years without interruption, within visible bounds, more land than their title called for, the boundary shall be fixed along these bounds." *Id.*

In discussing the burden of proof in an action to establish acquisitive prescription this court stated:

> It is well settled that the party pleading acquisitive prescription bears the burden of proving all of the facts that are essential to support it. The proof required to fix a boundary according to acquisitive prescription is the same proof required to prove ownership in a petitory action based on 30 year acquisitive prescription, i.e., continuous, uninterrupted, peaceable, public and unequivocal possession with a positive intention to possess as owner.

*Mistric v. Kurtz*, 610 So.2d 226, 230 (La.App. 3 Cir. 1992), *writ denied*, 612 So.2d. 102 (La.1993).

The interruption of acquisitive prescription is by acknowledgment, by filing suit, or when possession is lost. *Pison, Inc. v. Jackson*, 633 So.2d 234 (La.App. 1 Cir. 1993).

The Brookings do not disagree with the trial court's findings that the Vegases' ancestor-in-title, Caskey, exercised acts of possession over the disputed piece of land, in the form of mowing and using the fence to keep horses locked up. The Vegases continued to exercise control over the disputed piece of land. This included placing plants and exotic palms near the fence. However, they claim that the Vegases lost the right to possess the land before the thirty years had passed.

3

Possession of the disputed strip of land commenced on February 18, 1971, so if possession was not interrupted, the Vegases would have acquired ownership by thirty-years acquisitive prescription on February 19, 2001. Therefore, we will consider the Brooking's arguments and whether their actions interrupted the Vegases' possession of the disputed strip of land so as to interrupt the acquisitive possession.

There is no doubt that both the Brookings and the Vegases conducted surveys, both indicating that the fence line was not the boundary. However, this alone would not be sufficient to interrupt prescription as title is not at issue when establishing thirty-years acquisitive prescription. It is clear from the record that the Vegases continued to possess the land up to the fence line. However, the fence did deteriorate over the years with only some remnants of the fence remaining, a few posts and small amounts of wire were left on the ground. The section of the fence near the lake had been gone for some time.

The Brookings hired Roger Deville in 1999 to remove the remnants of the fence. The trial court found that Deville removed three fence posts but did not remove any fence posts in the Vegases' plants. Deville testified that he removed as much of the fence as he could. He tried his best to avoid the Vegases' plants but removed some of the palms because they were actually growing in the fenced area. It was Tom Butcher who testified that he did some work for Mr. Brooking and removed three fence posts. Mr. Brooking also testified that two to three fence posts were removed at a later time, after Deville had removed the posts.

Mr. Vegas admitted that he quit maintaining the fence when Mr. Brooking took cattle off his property. He did not go out and replace the fence that had been torn down. However, Mr. Vegas testified that, even after Mr. Brooking removed the fence, he continued to mow up to the same point as he had before.

John Swalm, a surveyor employed by Jordan, Kaiser and Sessions who

performed the survey in May 1999, testified about the condition of the fence when he surveyed the property. He explained that, at the time of the survey, he did not know that there was a dispute concerning the fence line. However, he did remember the condition of the fence line and told the court that there were more than 10 fence posts but less than 30. He stated that it was not much of fence and not really maintained very well and it was located about five feet on the Brooking side. Most of the wire was on the ground.

The trial court found that the removal of the fence posts by the Brookings was not sufficient to interrupt prescription. It further found that the Vegases continued to exercise control over the disputed land.

In *Bowman v. Blankenship*, 34,558 (La.App. 2 Cir. 4/4/01), 785 So.2d 134, *writ denied*, 01-1354 (La. 6/22/01), 794 So.2d 794, the second circuit agreed with the trial court that the act of bulldozing a fence interrupted the defendants' possession for the purposes of acquisitive prescription. We disagree with the trial court in this case and find that the Brookings' actions in removing the fence remnants also served to interrupt the Vegases' possession of the disputed property.

After the disturbance of their possession, the Vegases were required to recover possession with one year of the disturbance in order to continue their possession for purposes of acquisitive prescription. La.Civ.Code art. 3465. Mr. Vegas testified that he continued to mow up to where the fence line had been even after the fence remnants were removed. The palms and other plants that had been planted in the area of the fence were left intact when the fence remnants were removed. While Mr. Deville may have removed some of the plants when he removed the fence remnants, he did not remove them all and specifically tried to avoid them. We find that the trial court did not err in finding that the Vegases continued to exercise acts of possession in the area where the fence once existed and, therefore, recovered possession of the

disputed land. These acts of possession continued even after the fence was removed. Furthermore, the Brookings did not file suit in this matter until after the thirty-years acquisitive prescriptive had run from the date Caskey bought the property.

For these reasons we affirm the ruling of the trial court. Costs of this appeal are assessed to Cecil and Elizabeth Brooking.

**AFFIRMED.**

THIS OPINION IS NOT DESIGNATED FOR PUBLICATION.
Rules 2-16.2 and 2-16.3, Uniform Rules, Courts of Appeal.

CECIL BROOKING & ELIZABETH BROOKING

VERSUS

VICTOR P. VEGAS & BETTY RIVES VEGAS

**SAUNDERS, J. concurs.**

The resolution of this case hinges on whether or not the actions of the Brookings were sufficient to interrupt the thirty-year prescriptive period. Possession of the disputed strip of land began on February 18, 1971, therefore, if possession was not interrupted, the Vegases would have acquired ownership by thirty-years acquisitive prescription on February 19, 2001. It is undisputed that the Brookings did not file suit before the thirty-year period required for the Vegases to obtain ownership of the disputed strip had elapsed. It is also undisputed that the Vegases never acknowledged that title or ownership of the disputed strip of land resided in the Brookings. Although the Vegases were made aware of the actual boundary between the respective tracts of land by their survey, this in and of itself, is insufficient to impute an acknowledgment of ownership of the disputed strip in the Brookings by the Vegases. Therefore, it was incumbent upon the Brookings to show that the acts taken by them were sufficient to suspend or interrupt the thirty-year prescriptive period. *Smith v. Cutter Biological*, 99-2068 (La.App. 4 Cir. 9/6/00), 770 So.2d 392.

In order to do so the Brookings needed to show that their acts were sufficient to divest the Vegases of possession of the disputed strip of land. La.R.S. art. 3465. In May of 1999, both the Brookings and Vegases hired surveyors to demarcate the

boundary between the respective properties. Although both surveyors concluded that the correct boundary was not located along the "old fence line", we agree with the majority that this survey was insufficient to interrupt the prescriptive period. Additionally, the Brookings, on two occasions hired persons to remove the remains of the old fence and they assert that this act was sufficient to interrupt the prescriptive period. We note, however, that the Brooking's workers were careful in not removing any of the palm trees planted by the Vegases along the old fence line. I fail to see how removal of a remnant of a fence that no longer serves any purpose can be said to interfere with ones possession so as to interrupt prescription. Additionally, the Vegases exercised corporeal possession over the disputed strip by continuing to care for the palm trees they planted along the old fence line, continuing to mow the grass up to the old fence line and, continuing in all respects behavior concomitant with an owner of property without any interference from the Brookings. La.Civ.Code art. 3424. It thus seems to me that the acts of the Brookings were not sufficient to divest the Vegases of possession of the disputed strip of land, therefore, I agree with the reasoning of the trial court and its conclusion that there has been no interruption of the running of prescription.

However, assuming for the sake of argument that the acts of the Brookings were sufficient to interrupt the prescriptive period I would still find that the Vegases acquired ownership of the disputed property through acquisitive prescription and I agree with the reasoning of the majority to the effect that Louisiana Civil Code Article 3465 considers the interruption of the thirty-year period never to have occurred if the possessor recovers possession within one-year or if he recovers possession later by virtue of an action brought within the year.

I would also note that the case of *Bowman v. Blankenship*, 34,558 (La.App. 2

2

Cir. 4/4/01), 785 So.2d 134 while factually similar to the present case, is nevertheless distinguishable. In *Bowman* the second circuit affirmed the trial court's finding that bulldozing a fence constituted a disturbance sufficient to interrupt possession for purposes of acquisitive prescription. The court went on to state that the defendants were then required to recover possession of the disputed land within one-year in order to continue their possession for purposes of acquisitive prescription. Although the defendant, in that case, mowed the grass and parked cars in the disputed area, he was unable to prove he performed these acts and recovered possession of the disputed area within the one-year period contemplated by La.Civ.Code art. 3465.

The present case is distinguishable from those found in *Bowman* in that the Vegases never relinquished control over the disputed strip of land. Their acts of possession occurred within the one-year time frame required by La.Civ.Code art. 3465 and would be sufficient for the Vegases to assert a recovery of possession for the purposes of acquisitive prescription.