# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 08-973


LAVAN MERRITT, ET UX.

VERSUS

THOMAS MICHAEL BRENNAN, ET AL.


************

APPEAL FROM THE
ELEVENTH JUDICIAL DISTRICT COURT
PARISH OF SABINE, NO. 60,214
HONORABLE CHARLES B. ADAMS, DISTRICT JUDGE

************

## MICHAEL G. SULLIVAN
## JUDGE

************

Court composed of Marc T. Amy, Michael G. Sullivan, and Shannon J. Gremillion, Judges.


**AFFIRMED IN PART AND REVERSED IN PART.**

Edward P. Chevallier, Jr.
Attorney at Law
770 San Antonio Avenue
Many, Louisiana  71449
(318) 256-8858
Counsel for Plaintiffs/Appellees:
        Lavan Merritt
        Debbie W. Merritt

William D. Dyess
Dyess Law Firm, LLC
Post Office Drawer 420
Many, Louisiana  71449
(318) 256-5667
Counsel for Defendants/Appellants:
        Thomas Michael Brennan
        Kenneth W. Greer

**SULLIVAN, Judge.**

The defendants, Thomas Michael Brennan and Kenneth W. Greer, appeal a judgment of the trial court which rendered declaratory judgment in favor of the plaintiffs, Lavan Merritt and Debbie W. Merritt, declaring them to be the owners of a disputed tract of property; ordered the defendants to remove a fence and gate that had been built across the property; and awarded the plaintiffs trespass damages of $2,500.00 and attorney fees of $2,500.00. For the following reasons, we affirm in part and reverse in part.

### FACTS AND PROCEDURAL HISTORY

The property in dispute is located in Sabine Parish, Louisiana. The Merritts purchased a tract of land from Mrs. Merritt's parents, Lynn and Nadine Wooley, in 1977. The Wooleys had acquired the property from one of Mr. Wooley's relatives in 1971. In April of 2007, the defendants purchased a 7.67 acre tract of property adjacent to the Merritt's property from Imogene Rogers. The property at issue in this dispute is a triangular shaped area of land where the two properties join near Louisiana Highway 191.

Sometime around August of 2007, the defendants began clearing portions of their property. Timber was removed from the disputed tract and a fence was constructed across a significant portion of the Merritts' circular driveway. On September 18, 2007, the Merritts filed the instant suit against the defendants seeking trespass damages and a declaratory judgment declaring them to be the owners of the disputed tract of property. In their petition, the Merritts alleged that they and their ancestors in title had peacefully possessed the disputed tract for more than thirty years and that they were the legal owners of the disputed property.

1

A bench trial was held on May 23, 2008. Judgment was rendered on June 3, 2008, in favor of the plaintiffs, declaring them to be the owners of the disputed tract of property; ordering the defendants to remove the fence and gate that had been built across the property within seven days; and awarding the plaintiffs trespass damages of $2,500.00 and attorney fees of $2,500.00. The defendants now appeal. In their sole assignment of error, the defendants claim that the trial court erred in finding that the Merritts had proven acquisitive prescription of thirty years and in awarding them damages for trespass and attorney fees.

## DISCUSSION

An appellate court may not set aside a jury's or a trial court's finding of fact in the absence of manifest error or unless it is clearly wrong. *Rosell v. ESCO*, 549 So.2d 840 (La.1989). "[W]here there is conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable." *Id*. at 844. If the trial court's findings "are reasonable in light of the record reviewed in its entirety, the court of appeal may not reverse even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently." *Id*. Moreover, "[w]hen findings are based on determinations regarding the credibility of witnesses, the manifest error—clearly wrong standard demands great deference to the trier of fact's findings; for only the factfinder can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener's understanding and belief in what is said." *Id*.

2

This court discussed the concept of acquisitive prescription in *Brooking v. Vegas*, 03-1114, pp. 2-3 (La.App. 3 Cir. 2/4/04), 866 So.2d 370, 372, *writ denied*, 04-577 (La. 4/30/04), 872 So.2d 491, stating:

> "Acquisitive prescription is a mode of acquiring ownership or other real rights by possession for a period of time." La.Civ.Code art. 3446. "Ownership and other real rights in immovables may be acquired by the prescription of thirty years without the need of just title or possession in good faith." La.Civ.Code art. 3486. "For purposes of acquisitive prescription without title, possession extends only to that which has been actually possessed." La.Civ.Code art. 3487. "Acquisitive prescription is interrupted when possession is lost." La.Civ.Code art. 3465. "The interruption is considered never to have occurred if the possessor recovers possession within one year or if he recovers possession later by virtue of an action brought within the year." *Id.* "Possession is lost when the possessor manifests his intention to abandon it or when he is evicted by another by force or usurpation." La.Civ.Code art. 3433.

> "When a party proves acquisitive prescription, the boundary shall be fixed according to limits established by prescription rather than titles." La.Civ.Code art. 794. "If a party and his ancestors in title possessed for thirty years without interruption, within visible bounds, more land than their title called for, the boundary shall be fixed along these bounds." *Id.*

> In discussing the burden of proof in an action to establish acquisitive prescription this court stated:

>> It is well settled that the party pleading acquisitive prescription bears the burden of proving all of the facts that are essential to support it. The proof required to fix a boundary according to acquisitive prescription is the same proof required to prove ownership in a petitory action based on 30 year acquisitive prescription, i.e., continuous, uninterrupted, peaceable, public and unequivocal possession with a positive intention to possess as owner.

> *Mistric v. Kurtz*, 610 So.2d 226, 230 (La.App. 3 Cir.1992), *writ denied*, 612 So.2d 102 (La.1993).

In addition, this court has held that "[w]hether a party has possessed property for purposes of thirty year acquisitive prescription is a factual determination by the trial court and will not be disturbed on appeal unless it is clearly wrong." *Phillips v.*

3

*Fisher*, 93-928, p. 3 (La.App. 3 Cir. 3/2/94), 634 So.2d 1305, 1307, *writ denied*, 94-813 (La. 5/6/94), 637 So.2d 1056. *See also Otwell v. Diversified Timber Servs., Inc.*, 04-924, p. 4 (La.App. 3 Cir. 1/26/05) 896 So.2d 222, 225, *writ denied*, 05-467 (La. 4/22/05), 899 So.2d 575.

Both of the Merritts testified at trial, as did Mrs. Merritt's father, Lynn Wooley. Mr. Merritt stated that he and his wife had purchased approximately two acres of land along what is now Highway 191 from his in-laws in 1977. He and his wife had lived on the property since that time in a house that had been built in the 1940s by a member of his wife's family. According to Mr. Merritt, the western boundary of his property was marked by an old fence that ran along a tree line, a boundary which had existed since the time he bought the property. Most of the old fence was destroyed in August of 2007 when the defendants bulldozed the area, cut down timber, and built a fence and gate. He stated that up until that time, his family had continuously used and maintained the disputed property. More specifically, he stated that he and his son regularly mowed the grass up to the fence line, that his family had parked their cars in the circular driveway located in the disputed area since they acquired the property, and that he regularly welded and worked on vehicles near the fence line on his days off from work. According to Mr. Merritt, the defendants did not give him any notice before clearing the disputed property and building the fence and gate.

Mr. Merritt identified several old photographs, some dating back to 1959, showing the fence which marked the disputed line, as well as several photographs that he had taken more recently from the same vantage points. He also identified several photographs which he took in the summer of 2007 showing sections of the old fence. Finally, he identified photographs depicting the new fence and gate that had been

4

built by the defendants across the disputed property. All of the photographs were entered into evidence.

When asked about a survey that had been commissioned by Mrs. Rogers from Kenneth Murphy in 2001 when she bought the property adjacent to his, Mr. Merritt acknowledged knowing that a survey had been done and that stakes had been put down across his property. He explained, however, that he did not file a lawsuit at that time because he was able to continue using the property as he had always done. With regard to damages that he had suffered as a result of the defendants' trespass on his property, Mr. Merritt testified that his parking area had been reduced by 75%, that the use of his yard had been reduced, and that he had been prevented from using his circular driveway, the driveway that he used most frequently.

Mrs. Merritt testified that she remembered the old fence line from when she was a young child. She stated that she and her husband had always disagreed with the property line depicted in the Murphy survey. Nevertheless, she reiterated that because she and her family continued to use the property as they always had, she and her husband had not filed a lawsuit contesting the ownership of the disputed property at that time. She stated that this lawsuit was filed when the defendants built the fence across her land. Mrs. Merritt testified that as a result of the defendants' trespass, her family had lost the use of one of their driveways, most of their front yard, and part of their side yard.

Mr. Wooley confirmed that in the late 1940s, his brother had built the house in which the Merritts had lived since they bought the property from him. He stated that the house had originally "set up square with the old original gravel road." When shown the 1959 photographs, Mr. Wooley identified the old fence. He stated that he

was seventy-five years old and that he remembered the old fence being in that location from when he was five or six years old because it had been his job to patch the fence to keep hogs out. He noted that the gravel road was considerably further out from the Merritts' property back then, as opposed to where Highway 191 had been built.

Mrs. Rogers was called as a witness on behalf of the defendants, along with Rita Ann Rogers Randolph,[1] and the defendant, Mr. Brennan. Mrs. Rogers testified that when she and her husband bought some property next to the Merritts' property in 2001, they had it surveyed by Mr. Murphy. She stated that property was staked after the survey. She recalled a conversation that she had had with Mr. Merritt wherein she offered to sell him the land where his driveway was located, but he had declined her offer. Mrs. Rogers admitted, however, that she had never threatened legal action against the Merritts to get off of what she considered to be her land.

Mrs. Randolph also testified on behalf of the defendants. She was familiar with the land in dispute because it adjoined her grandfather Rogers' property where she had played as a child. She was fifty-nine years of age at the time of trial. When asked about whether she remembered an old fence cutting across the contested property, Mrs. Randolph denied ever seeing an old fence. She stated that she used to run across the properties barefoot, and she never saw a fence or stepped on any barbed wire fencing. Using the pictures that had been submitted as exhibits by the Merritts, the trial judge intensely questioned Mrs. Randolph in an attempt to pinpoint the exact location of where she played as a child.

---

[1]It is unclear from the record whether Mrs. Randolph is related to Mrs. Imogene Rogers.

6

The last witness to testify was Mr. Brennan. He stated that he had a survey done by Douglas Dockens before purchasing the land from Mrs. Rogers in May of 2007. That survey placed the property line across the Merritts' front yard and driveway. According to Mr. Brennan, he and Mr. Merritt had a discussion about the Merritts buying the disputed property, and Mr. Merritt told him that he "wasn't interested." He stated that when he started clearing the land, he never saw an old fence line or wire. When questioned about why he decided to fence off the Merritts' driveway while not fencing off the rest of his property, Mr. Brennan stated that he knew that the Merritts were contesting his ownership of the disputed property and that because of "inquisitive prescription," he had "[t]o bring this thing to head" before thirty years.

In ruling in favor of the Merritts, the trial court stated that it was:

[T]hroughly [sic] convinced that there was an old fence going down the side of the drive as depicted in P-6. The location of the home, the age of the home, how it is situated in relation to the old highway and the new highway, with the existing circular drive, the Court finds that it was more than thirty years possession by the Merritts and certainly much more [by] their ancestors in title.

The defendants assert that the Merritts failed to prove that they had continuous, uninterrupted possession of the disputed land. They argue that the Merritts did not have continuous, uninterrupted possession of the land after the Murphy survey was conducted and stakes were put across what they claimed was their land in June of 2001. The defendants submit that, from that point on, the Merritts knew that the property did not belong to them and that they only occupied the property with Mrs. Rogers' permission, as opposed to occupying the property as owners as required by law.

7

The Merritts counter that, despite their knowledge of the Murphy survey, they always contested the proper boundary line between the two properties. Moreover, the Merritts submit that the trial testimony proved that they and their ancestors in title had continuously used and occupied the disputed tract of land, up to the old fence line, for over seventy years.

As previously noted, whether a party has possessed property for purposes of thirty-year acquisitive prescription is an issue of fact to be determined by the trial court which should not be disturbed on appeal unless it is clearly wrong. The Merritts presented testimony and photographic evidence showing that they and their ancestors in title possessed the property in question, as marked by an old fence line at the edge of a clearing, for more than thirty years. Moreover, we conclude that the testimony proved that the Merritts always believed that they were the true owners of the disputed property and that they maintained possession of the disputed property up until the time that the defendants fenced them out. None of the testimony elicited by the defendants directly or conclusively contradicted the evidence presented by the Merritts.

Given the applicable standard of review, we cannot say that the trial court erred in finding that the Merritts had met their burden of proving all the facts necessary to entitle them to be declared the owners of the disputed property on the basis of acquisitive prescription. In light of this finding, we likewise find no error in the trial court's having awarded the Merritts $2,500.00 for the damages that they testified to having sustained as a result of the defendants' trespass on their property. We reverse the trial court's award of attorney fees, however, because the record contains no evidence of a statute or contract authorizing the award of attorney fees under the

circumstances present in this case. *Booth v. Madison River Commc'ns*, 02-288 (La.App. 1 Cir. 6/27/03), 851 So.2d 1185, *writ denied*, 03-2661 (La. 12/12/03), 860 So.2d 1161.

## DECREE

For the foregoing reasons, the portion of the trial court's judgment awarding Lavan and Debbie W. Merritt attorney fees in the amount of $2,500.00 is reversed. The judgment is affirmed in all other respects. Costs of this appeal are assessed to Thomas Michael Brennan and Kenneth W. Greer.

**AFFIRMED IN PART AND REVERSED IN PART.**