NOT DESIGNATED FOR PUBLICATION

STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

09-1346


LESTER E. SOILEAU, JR., ET AL.

VERSUS

DARREL FOREMAN


**********

APPEAL FROM THE
THIRTEENTH JUDICIAL DISTRICT COURT
PARISH OF EVANGELINE, NO. 69134 A
HONORABLE JOHN LARRY VIDRINE, DISTRICT JUDGE

**********

SHANNON J. GREMILLION
JUDGE

**********

Court composed of Marc T. Amy, Elizabeth A. Pickett, and Shannon J. Gremillion, Judges.


AFFIRMED.


Guy Olden Mitchell, III
Attorney at Law
225 Court Street
Ville Platte, LA 70586-4492
(337) 363-0400
Counsel for Defendant/Appellee:
Darrel Foreman

**Jonathan Clyde Vidrine**
**West & Vidrine**
**P. O. Drawer 1019**
**Ville Platte, LA 70586**
**(337) 363-2772**
**Counsel for Plaintiffs/Appellants:**
**Lester E. Soileau, Jr.**
**Robert Glenn Soileau**
**Virginia D. Soileau**
**Floyd M. Soileau**

**GREMILLION, Judge.**

Plaintiff/appellant, Lester E. Soileau, Jr., contests the judgment of the trial court in favor of defendant/appellee, Darrell Foreman, dismissing Soileau's suit to enforce building restrictions and declaring Foreman to be the owner of a 35-foot strip of land that had been reserved to Soileau for future use as a road. For the reasons that follow, we affirm.

### FACTS

In 1962, Lester E. Soileau, Sr., developed a residential subdivision known as Les Bois de Soileau in Ville Platte, Louisiana. On October 20, 1966, he sold lots 130 and 131 fronting Carson Street to George W. Warren. The acts of sale provided:

> The above property described is sold with the understanding that it is to be used solely for residential purposes, and that any house built on the above property will be new construction. Hauling of ready built houses is prohibited.

Bordering lot 130 on the south lay a 35-foot strip designated on the subdivision plat as "reserved for street." No street has been paved through this strip, and it remains unimproved in any way, except as will be discussed later.

On June 6, 2006, Eleanor Faye Lafleur Warren, George's wife, donated lots 130 and 131 to Darrell Foreman and Marie Lafleur Foreman, Eleanor's sister. On September 28, 2007, the Foremans filed quit claim deeds executed in their favor by the Warrens' descendants. Before the acquisition by the Foremans, there was no structure on lots 130 or 131. Soileau maintains that his mother, who administered the subdivision before her death, hired people to mow the undeveloped lots, including 130 and 131. Foreman contends that his brother-in-law, Mike Lafleur, mowed lots 130 and 131 as well as the 35-foot strip. Lafleur testified that he knew the Warrens were aware of the 35-foot strip. He also testified that he assisted Warren in the placement of a culvert along Carson Street within that 35-foot strip. He did not

testify when this was done.

At some point, Mr. Elton Manuel, an electrical inspector for the City of Ville Platte, who lives down Carson Street from the lots, noticed that a utility pole had been installed. He contacted Soileau to inform him that it appeared that someone was planning on placing a mobile home on the lots. Soileau drafted a notice that he affixed to the utility pole reminding Foreman of the building restrictions. Later, Soileau saw finishers working on a concrete slab and asked them what was being built. The workers indicated that someone was constructing a "building" there. The "building" Foreman placed on the lot is a large metal motor home garage with an attached one-room apartment. Foreman furnished the apartment with two chairs and a bed. It also has a window-unit air conditioner. There is a lavatory and shower servicing the apartment. The Foremans stay in the apartment two to three times a week. They cook on a hot plate in the apartment. Beneath the garage, Foreman placed a travel trailer.

Foreman himself determined the placement of the slab for this garage by measuring from a fence to the south of the 35-foot strip. He placed the slab at a point he thought was 39 feet from the fence. He testified that he did not intend to occupy or own the 35-foot strip. He intends to build further on the lots.

Soileau retained Mr. Doward L. Guillory, a professional land surveyor, to survey the property. Guillory determined that the garage was built partially on lot 130 and encroaching, at its greatest extent, 6.2 feet into the 35-foot strip.

Soileau filed suit for declaratory judgment and to enforce the building restrictions. Foreman reconvened asserting ownership through 30-year acquisitive prescription over the 35-foot strip.

2

After trial on the merits, the trial court found that the building restriction had been abandoned because a number of violations, documented in photographs taken by Foreman, had been tolerated, and that Foreman owned the 35-foot strip through his ancestors in title's bad faith acquisitive prescription. Soileau appealed.

## ASSIGMENTS OF ERROR

Soileau assigns as error:

(1) The trial court's finding that the building restrictions were abandoned; and,

(2) The trial court's finding that Foreman acquired ownership of the 35-foot strip through acquisitive prescription of 30 years.

## ANALYSIS

*Building Restrictions*

Building restrictions are governed by La.Civ.Code arts. 775 et seq. They terminate through abandonment of the whole plan or by a general abandonment of a particular restriction. La.Civ.Code art. 782. Important to this case, the Civil Code provides that doubts as to the existence, validity or extent of building restrictions is resolved in favor of the unrestricted use of the land. La.Civ.Code art. 783.

The restriction at issue here has three restrictions on the use of the land: (1) the land must be used for residential purposes; (2) houses built must be new construction; and, (3) no "ready built" houses can be hauled onto the land. Applying strict construction to this building restriction, we find that the prohibition restricts owners from placing manufactured homes and moving other prefabricated structures on the lots. Foreman's structure does not violate the restriction because it was built from the ground up, and was not a prefabricated structure. The testimony establishes that, while the garage may not meet the traditional concepts of a residential structure, its

3

use is at least partially residential. Applying the ordinary usage of the term "residential" as we did in *Stevens v. Bruce*, 04-133 (La.App. 3 Cir. 6/2/04), 878 So.2d 734, the garage meets the definition as it is being used as a residence, i.e., a building used as a home.

Because we find that the garage does not violate the building restrictions, we need not address whether the restriction at issue has been abandoned.

*Acquisitive Prescription*

Ownership may be acquired through prescription. La.Civ.Code arts. 3473 et seq. Immovables are subject to acquisition through prescription of either ten or 30 years, depending upon whether the possessor is in good faith and has just title. *See* La.Civ.Code arts. 3475 and 3486. Good faith is a reasonable belief, in light of objective considerations, that one is the owner of the thing he possesses. La.Civ.Code art. 3480. The Civil Code defines "just title" as a written juridical act sufficient to transfer ownership, such as a sale or donation, that is valid in form and filed for registry in the conveyance records of the parish in which the immovable is situated. La.Civ.Code art. 3483. If one does not possess both in good faith and with just title, he can only acquire ownership through prescription by the passage of 30 years.

The evidence at trial firmly establishes that Foreman's ancestors did not have just title over the 35-foot strip. The acts of sale for lots 130 and 131 describe 50-foot frontages for each lot along Carson Street. That would not encompass the 35-foot strip. Further, Foreman and Lafleur both testified regarding the issue of good faith, with both affirming knowledge of the Warrens and Foreman they did not own the 35-foot strip. Good faith is presumed; however, that presumption is rebutted on proof

4

that the possessor knows or should know that he is not the owner of the thing possessed. Such proof was given by Foreman and Lafleur. Therefore, Foreman could only acquire ownership of that strip through 30-year prescription.

Another requisite of acquisitive prescription is continuous, uninterrupted, peaceable, public and unequivocal corporeal possession of the thing. La.Civ.Code art. 3476. "To acquire possession, one must intend to possess as owner and must take corporeal possession of the thing." La.Civ.Code art. 3424. A transferor's possession is tacked to that of his transferee if there has been no interruption of possession. La.Civ.Code art. 3442. Another applicable principle governing this case is that when a party proves acquisitive prescription, the boundary is fixed according to the limits established by prescription rather than titles, and when the party and his ancestors in title possessed within visible bounds more than their title called for, the boundary is fixed along these bounds. La.Civ.Code art. 794.

The question before the trial court really involved the determination whether possession by Foreman's ancestors in title, the Warrens, was proven. The trial court found that such possession was proven. That finding represents one of fact, and is subject to reversal only on a determination that it was manifestly erroneous. *Merritt v. Brennan*, 08-973 (La.App. 3 Cir. 2/4/09), 3 So.3d 646.

The manifest error standard of review is not an easy hurdle to clear. The Louisiana Supreme Court has established a two-part test to determine whether a finding is manifestly erroneous:

1) The appellate court must find from the record that a reasonable factual basis does not exist for the finding of the trial court, and

2) the appellate court must further determine that the record establishes that the finding is clearly wrong (manifestly erroneous).

5

*Stobart v. State through Dept. of Transp. and Dev.*, 617 So.2d 880, 882 (La.1993). The reviewing court must examine the record in its entirety to determine, not whether the factfinder's conclusion was wrong, but whether the conclusion is reasonably supported by the record. *Id.* The trial court has greater capacity to evaluate the credibility of witnesses; therefore, where there are two permissible views of the evidence, the factfinder's choice between them cannot be manifestly erroneous. *Id.*

Soileau correctly points out that Foreman testified that he never possessed with intent to own the strip. The real focus, though, should not be on Foreman, who only acquired lots 130 and 131 in 2006, but on the Warrens, who purchased the property in 1966. It is only through the Warrens that Foreman could acquire ownership of the property.

The record does reflect a reasonable basis for the trial court's determination that the Warrens had possessed the 35-foot strip. They regularly maintained the strip. They installed a culvert in a location the exhibits reflect to be approximately in the center of the frontage of the strip on Carson Street. While no overt evidence established the Warrens' intent to possess *as owners*, the law presumes such intent. La.Civ.Code art. 3427. No evidence was introduced to rebut the presumption. We concur that in the context of this case, these actions were sufficient to constitute possession. Lafleur testified that he maintained the lots and the strip from the time he was about 14 years old. He was 56 years old at the time of trial. Thus, possession exceeded 30 years.

## CONCLUSION

Foreman's construction of the motor home garage did not violate the building restriction limiting use of the property to residential purposes and prohibiting the

6

placement of manufactured or prefabricated houses on the lots. The trial court did not err in determining that Foreman's ancestors in title possessed the 35-foot strip and acquired same through prescription. The judgment of the trial court is affirmed. All costs of this appeal are taxed to plaintiff/appellant, Lester E. Soileau, Jr.

**AFFIRMED.**

7