ROLAND L. BELSOME, Judge.
 

 [, This appeal arises from a dispute over property boundaries by adjacent property owners. After a trial on the merits, the trial court ruled in favor of Constance Brown, determining that the placement of Ms. Brown’s proposed fence was consistent with where the property line had been established by numerous surveys over the years. For the following reasons we affirm.
 

 The disputed property line separates two Orleans Parish properties, 1311 St. Claude Avenue and 1317 St. Claude Avenue. Ms. Brown owns the property at 1311 St. Claude Avenue. That property was originally acquired by her parents on August 1, 1958. A member of her family has continuously occupied the property since that date and she has owned and occupied the property since 1976.
 

 Mr. Chambless is the current owner of the property situated at 1317 St. Claude Avenue, adjacent to Ms. Brown’s property. He acquired that property on March 7, 2008. He contends that at the time he purchased the property, Ms. Brown had a fence in place. Mr. Chambless further claims that on or about March 6, 2009, Ms. Brown began efforts to move that fence onto his property. It was at that I?time that Mr. Chambless filed a Petition for Possessory Action, Preliminary and Permanent Injunctions.
 

 On March 19, 2009, the trial court held a hearing on Mr. Chambless’ request for preliminary injunction. The request was denied by judgment dated March 30, 2009. A trial on the merits was conducted on October 29, 2009. At the conclusion of the trial the matter was submitted to the court. The trial court rendered judgment on December 8, 2009 in favor of Ms. Brown. Mr. Chambless has appealed.
 

 On appeal, Mr. Chambless argues that the trial court erred by not finding that Ms. Brown judicially confessed possession of the disputed strip of land to Mr. Cham-bless in accordance with La. C.C.P. art. 3657. He also contends that the trial court erred in its finding that Mr. Chambless had not acquired the property through acquisitive prescription.
 

 Louisiana law prohibits the cumulation of a petitory action with that of a possessory action. La. C.C.P. art. 3657. Mr. Chambless filed a possessory action claiming that his possession of his property has been disturbed. If by answering Mr. Chambless’ allegations, Ms. Brown asserts title to the property the matter is converted to a petitory action in which Ms. Brown has recognized Mr. Chambless’ possession.
 
 Id.
 
 In order for the assertion of title to convert the possessory action into a petitory action there must be some formal claim of title in the answer, not just mere allegations of ownership.
 
 New Orleans 2000 Partnership v. City of New Orleans,
 
 
 *961
 
 91-3160, unpubl., 1993 WL 515752 (E.D.La.1993);
 
 Crowell Land and Mineral Corp. v. Neal,
 
 428 So.2d 496, 499 (La.App. 3 Cir.1983) (citing
 
 Haas Land Co. v. O’Quin,
 
 187 So.2d 208 (La.App. 3 Cir.1966) and
 
 Voisin v. Luke,
 
 234 So.2d 862 (La.App. 1 Cir.1970)). A review of Ms. Brown’s answer to Mr. Chambless’ possessory action reveals no more than a general denial of the allegations set forth and therefore is insufficient to convert the suit pursuant to La. C.C.P. art. 3657. Thus, we find no error on the part of the trial court in that respect.
 

 The trial court also found that Mr. Chambless failed to prove ownership through acquisitive prescription. Mr. Chambless had alleged that an approximately two foot strip of land had been acquired through acquisitive prescription by his ancestors in title. Therefore, he owns the land.
 

 Ownership of immovable property can be acquired through either a ten year or a thirty year prescriptive period. La. C.C. arts. 3473
 
 et seq.
 
 A good-faith possessor with just title is subject to the ten year period. La. C.C. arts. 3475. The possessor without just title is considered a bad-faith possessor and is subject to the 30 year prescriptive period. La.C.C. art. 3486. To establish acquisitive prescription there must be continuous, uninterrupted, peaceable, public and unequivocal corporeal possession of the thing. La. C.C. art. 3476;
 
 also see
 
 La.C.C. art. 3488.
 

 The determination of whether property has been acquired through acquisitive prescription is one of fact and subject to the manifest error/clearly wrong standard.
 
 Merritt v. Brennan,
 
 08-973 (La.App. 3 Cir. 2/4/09), 3 So.3d 646. On review we are charged with ascertaining whether the factfinder’s conclusion was reasonably supported by the record.
 
 Stobart v. State through Dep’t. of Transp. and Dev.,
 
 617 So.2d 880, 882 (La.1993). Where there are two permissible views of the evidence, the factfinder’s choice between them cannot be manifestly erroneous or clearly wrong.
 
 Rosell v. ESCO,
 
 549 So.2d 840 (La.1989).
 

 14At trial the court heard the testimony of Samuel Z. Scandaliato, Ms. Brown, Frank Williams, Jr., Andrea Hubert, and Mr. Chambless. Mr. Scandaliato was accepted as an expert in land surveying. On the stand, he stated that he established the old fence was properly on the property line as were the new fence poles. Mr. Scandal-iato also claimed that in his opinion the property line and fence location were consistent with the six surveys he reviewed dating back to 1917, and is situated two feet from Mr. Chambless’ structure.
 

 Next, Ms. Brown gave testimony indicating that her parents had purchased the property at 1311 St. Claude in 1958. Ms. Brown has owned and occupied the property since 1976.
 
 [1]
 
 She recalls an old fence that she referred to as lapboard fence, being in place when her family first purchased the property. Then, in the late 60’s or early 70’s her parents paid to have a chain linked fence constructed. That was the fence that was destroyed by Hurricane Katrina and eventually placed up against the damaged house in an attempt to keep intruders out. She claims that the damaged fence was pushed even closer to her home by heavy equipment used during Mr. Chambless’ renovations to his property. Once she began repairing the home she also paid to have a new fence installed. It
 
 *962
 
 was the construction of the new fence that prompted this legal action.
 

 Ms. Brown’s brother, Mr. Williams also gave testimony concerning the positioning of the old fence. He lived in the property from 1958 until 1970. He remembered his parents paying for and erecting a fence on their property and to the best of his recollection the new fence post and property line are consistent with the placement of the old fence.
 

 |fiMs. Hubert, the previous owner of Mr. Chambless’ property provided her testimony at trial. She sold the property to Mr. Chambless in March, 2008. She stated that the house had been in her family since 1947 and she lived there as an infant for approximately two and one-half years. In 1984 she inherited the property from her mother. Prior to selling the property in 2008, she maintained the house as rental property. She claimed that she has managed the property since approximately 1977 and paid people to cut the grass during that time period. Additionally, she recalled walking space between Ms. Brown’s fence and the house on her property.
 

 Lastly, Mr. Chambless was called to the witness stand. He discussed purchasing the property in 2008 and beginning renovations that included an addition to the house. He explained that his contractor had called him when Ms. Brown’s fence poles were being installed. He had Ms. Brown’s workers stop the installation of the poles and he filed this possessory action based on the location of the old fence from the time of his purchase of the property.
 

 Considering the testimony as a whole, the trial court found that the expert testimony of Mr. Scandaliato and testimony of Ms. Brown established the correct location of both the old fence and new fence poles as being on the property line. That finding was not inconsistent with Ms. Hubert’s testimony. Other than a brief period as an infant, she never resided at the property, but did remember that she could walk between Ms. Brown’s old fence and the house on her property. That is not contradictory to Mr. Scandaliato’s testimony that the property line and fence |fiare two feet from the structure on Mr. Chambless’ property. Further, Mr. Chambless was only able to testify as to the position of the damaged fence after Hurricane Katrina. He presented no other evidence that would support his assertion that he possessed and/or owned all the land from the place the damaged fence was situated to the location of his house.
 

 Accordingly, based on the record we cannot find that the trial court’s determinations of fact were unreasonable and therefore we affirm.
 

 AFFIRMED.
 

 [1]
 

 . Ms. Brown’s occupancy of her home was interrupted due to damage caused by Hurricane Katrina.