STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

20-40

CONSOLIDATED WITH 20-41


JAMES C. PERKINS, TRUSTEE OF THE
LIVING TRUST OF JAMES & EMILY PERKINS

VERSUS

ANDREW J. FOWLER & BLANCHE DERAMUS
FOWLER


\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
NINTH JUDICIAL DISTRICT COURT
PARISH OF RAPIDES, NO. 250,334 C/W 250,346
HONORABLE GEORGE CLARENCE METOYER JR, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

D. KENT SAVOIE
JUDGE

\*\*\*\*\*\*\*\*\*\*

Court composed of Sylvia R. Cooks, D. Kent Savoie, and Candyce G. Perret,
Judges.


AFFIRMED.

**Richard Alan Rozanski**
**Trevor C. Mosby**
**Richard A. Rozanski, APLC**
**2312 South MacArthur Drive**
**Alexandria, Louisiana 71315**
**(318) 445-5600**
**COUNSEL FOR PLAINTIFF/APPELLEE:**
 **James C. Perkins, Trustee of the Living Trust of James and Emily**
 **Perkins**

**Brian K. Thompson**
**Thompson Law Firm, LLC**
**3600 Jackson Street, Suite 115B**
**Alexandria, Louisiana 71303**
**(318) 473-0052**
**COUNSEL FOR DEFENDANTS/APPELLANTS:**
 **Andrew J. Fowler**
 **The Unopened Succession of Blanche Deramus Fowler**

**SAVOIE, Judge.**

In this property dispute, the trial court rendered judgment in favor of Plaintiffs James Clinton Perkins and Emily Louise Perkins, individually and as Trustees of the Living Trust of James and Emily Perkins and against Defendants Andrew J. Fowler and the Unopened Succession of Blanche Deramus Fowler. Defendants now appeal. For the following reasons, we affirm.

## FACTS AND PROCEDURAL HISTORY

This case previously came before this court on an appeal from the trial court's grant of the Fowlers' Motion for Summary judgment, recognizing their right to possess the property at issue. In that opinion, this court summarized the facts and procedural history as follows:

> On June 12, 1963, James C. Perkins and Emily L. Perkins, purchased a 10.2 acre tract of land located in Lecompte, Louisiana. The Perkins established this property as their homestead, clearing the land and building a home. They maintained a constant presence on the land from that date to the present.
>
> In 2014, Andrew Fowler, who lived on land next to the Perkins, began removing fencing and trees on property the Perkins alleged belonged to them. The Perkins eventually contacted the Rapides Parish Sheriff's Department in connection with this activity. In connection with this, on June 11, 2014, James C. Perkins, as Trustee of the Living Trust of James and Emily Perkins, filed a "Petition for Possession, Temporary Restraining Order, Preliminary and Permanent Injunction and Damages." At issue was a thirty-two foot strip of land that bordered the Perkins property on the south side. In the possessory action, it was claimed the Perkins had been in "actual physical, corporeal possession, with the intent as owner" of the property in question "for a period in excess of one (1) year prior to any disturbance in fact by Defendant." A Temporary Restraining Order and Rule to Show Cause was issued by the district court on June 11, 2014.
>
> In their suit, the Perkins claimed that, for seventy years, there existed a barbed wire fence encompassing the Perkins' tract of land. They further asserted this fence was maintained and utilized by them, but that over time trees began to grow along the property line, and the fence began to decay. They assert the tree line essentially became the

fence line of the property, and they would connect the barbed wire fence to the trees to keep it upright. They maintained at all times they have lived on the property and possessed up to the tree line as owners. In response, Fowler answered the Perkins suit and also, on October 14, 2014, Fowler filed a separate "Petition for Possession, Preliminary and Permanent Injunction and Damages." In that suit, Fowler claimed a disturbance in corporeal possession as the owner of five contiguous tracts of land located in Rapides Parish and including the thirty-two foot strip of land in question.

The two suits were consolidated by the district court as set forth in the petition. Thereafter, the Perkins filed an amended petition asserting they were "owners" of the property and further prayed for relief "declaring petitioner to be the exclusive owner of all of the land enclosed by the boundaries set forth on the Phillips survey and in accordance with petitioners recorded title."

On December 5, 2016, Fowler filed a Motion for Summary Judgment, contending that there was no disputed material facts that Perkins converted his possessory action to a petitory action and therefore, pursuant to La.Code Civ.P. art. 3567, judicially confessed Fowler's possession of the disputed property. Perkins filed an opposition to Fowler's motion for summary judgment, maintaining the original possessory action was converted into a declaratory action that did not confess possession in the adverse party.

The parties each introduced surveys that were conflicting as to who owned the thirty-two foot strip of land, as well as memoranda in support of their respective positions on whether summary judgment was appropriate. After a hearing on the motion, the trial court rendered judgment in favor of Fowler as to the thirty-two foot strip of land.

*Perkins v. Fowler*, 17-392, 17-393, pp. 2-3 (La.App. 3 Cir. 11/22/17), 234 So.3d 96, 97-98.

The Perkins appealed the grant of the Fowlers' Motion for Summary Judgment. A panel of this court reversed the trial court's judgment, ruling:

Accordingly, we find the trial court erred in finding the Perkins' amended petition converted their initial possessory action into a petitory action, thus judicially confessing ownership of the disputed property to Fowler. Without that judicial confession, which by law would constitute full proof against the party that made it, the record clearly contains material issues of fact as to possession of the thirty-two foot strip of land. The record contains conflicting surveys with different boundary lines, as well as disputes over Fowler's actual

2

possession of the disputed area. Therefore, summary judgment was inappropriate in this matter, and the judgment must be reversed.

*Id.* at 100.

After a remand to the trial court, this matter moved forward to a trial on the merits. The trial was held on April 30, 2019 and May 1, 2019, after which the trial court ruled:

> **IT IS ORDERED, ADJUDGED, AND DECREED** that the plaintiffs are the owners of certain immovable property identified as a 19.9 acre tract located in Section 68 T2N-R1E, Rapides Parish, Louisiana particularly described as follows:
>
> > **A TRACT OF LAND IN SECTION 68, TOWNSHIP 2 NORTH, RANGE 1 EAST, RAPIDES PARISH, LOUISIANA, HAVING AN AREA OF APPROXIMATELY 19.90 ACRES, SAID TRACT BEING OUTLINED IN HEAVY RED LINES ON THAT CERTAIN PLAT SURVEY OF LOUIS J. DAIGRE ASSOCIATES, DATED SEPTEMBER 18, 1967, A COPY OF WHICH IS ATTACHED THERETO AND PARAGRAPHED BY THE UNDERSIGNED NOTARY FOR GREATER CERTAINTY OF DESCRIPTION, AS EXHIBIT "D".**
>
> **IT IS FURTHER ORDERED, ADJUDGED, AND DECREED** that the plaintiffs boundary lines as to the 32 foot strip of land that exist are reflected in that certain survey by Matthew Phillips dated September 1, 2014 and revised September 11, 2014 attached hereto and made apart hereof.

The Fowlers now appeal.

## ASSIGNMENTS OF ERROR

1. The trial court erred as a matter of law by finding that claimed title extending beyond a visible boundary fence was sufficient to overcome exclusive possession by adjacent landowners of the 32 foot lane over 57 years.

2. The trial court erred as a matter of law by finding that a manufactured title to the 19.9 acre tract was sufficient to overcome exclusive possession within visible boundaries for over 57 years.

3

## DISCUSSION

*Applicable Law*

"The location of a boundary is a factual issue which should not be reversed on appeal absent manifest error." *Tauzin v. Degeyter*, 583 So.2d 565, 568 (La.App. 3 Cir. 1991) (citing *Williamson v. Kelly*, 520 So.2d 868 (La.App. 3 Cir. 1987), *writ denied*, 522 So.2d 562 (La.1988)). In *Stelly v. Bergeron*, 19-102, p. 14 (La.App. 3 Cir. 10/30/19), 283 So.3d 536, 546, a panel of this court explained:

> With respect to actions seeking to establish the boundary between two properties, the civil code provides as follows: "The court shall fix the boundary according to the ownership of the parties; if neither party proves ownership, the boundary shall be fixed according to limits established by possession." La.Civ.Code art. 792. "When both parties rely on titles only, the boundary shall be fixed according to titles. When the parties trace their titles to a common author preference shall be given to the more ancient title." La.Civ.Code art. 793. "When a party proves acquisitive prescription, the boundary shall be fixed according to limits established by prescription rather than titles." La.Civ.Code art. 794.

"After considering the evidence, including the testimony and exhibits of a surveyor or other expert appointed by the court or by a party, the court shall render judgment fixing the boundary between the contiguous lands in accordance with the ownership or possession of the parties." La.Code Civ.P. art. 3693.

The Perkins allege ownership through acquisitive prescription. In *Brooking v. Vegas*, 03-1114, pp. 2-3 (La.App. 3 Cir. 2/4/04), 866 So.2d 370, 372, *writ denied*, 04-577 (La. 4/30/04), 872 So.2d 491, this court discussed acquisitive prescription, stating:

> "Acquisitive prescription is a mode of acquiring ownership or other real rights by possession for a period of time." La.Civ.Code art. 3446. "Ownership and other real rights in immovables may be acquired by the prescription of thirty years without the need of just title or possession in good faith." La.Civ.Code art. 3486. "For purposes of acquisitive prescription without title, possession extends

4

only to that which has been actually possessed." La.Civ.Code art. 3487.

Regarding burden of proof in an acquisitive prescription case, this court in *Mistric v. Kurtz*, 610 So.2d 226, 230 (La.App. 3 Cir. 1992), *writ denied*, 612 So.2d 102 (La.1993), stated:

> It is well settled that the party pleading acquisitive prescription bears the burden of proving all of the facts that are essential to support it. The proof required to fix a boundary according to acquisitive prescription is the same proof required to prove ownership in a petitory action based on 30 year acquisitive prescription, i.e., continuous, uninterrupted, peaceable, public, and unequivocal possession with a positive intention to possess as owner. La.C.C. arts. 3424, 3476 and 3486; *Allen v. Martino,* 529 So.2d 90 (La.App. 1st Cir.1988); *Williams* [*v. Peacock*, 441 So.2d 57 (La.App. 3 Cir. 1983)]*,* supra; *Briggs v. Pellerin,* 428 So.2d 1087 (La.App. 1st Cir.1983).

Louisiana law allows for the tacking of possession from the transferor to the transferee as long as there has been no interruption of possession. La.Civ.Code art. 3442. Tacking is "the process of establishing title to land by adverse possession, when the present occupant and claimant has not been in possession for the full statutory period, but adds or 'tacks' to his own possession that of previous occupants under whom he claims." Black's Law Dictionary (6th ed. 1990). In the present case, the trial court tacked on Perkins' ancestor-in-title's possession in order to establish Perkins' ownership through acquisitive prescription.

Further, "this court has held that '[w]hether a party has possessed property for purposes of thirty year acquisitive prescription is a factual determination by the trial court and will not be disturbed on appeal unless it is clearly wrong.'" *Merritt v. Brennan*, 08-973, p. 3 (La.App. 3 Cir. 2/4/09), 3 So.3d 646, 649 (quoting *Phillips v. Fisher*, 93-928, p. 3 (La.App. 3 Cir. 3/2/94), 634 So.2d 1305, 1307, *writ denied*, 94-813 (La. 5/6/94), 637 So.2d 1056).

5

*19.9-Acre Tract of Land*

Both parties assert that the 19.9-acre tract appears in their chain of title and both claim to have physically possessed the disputed tract. Robert Wolfe is a licensed civil engineer, environmental engineer, and land surveyor employed by Morgan Goudeau and Associates. He testified that he reviewed both the Perkins title and the Fowler title to this property. Mr. Wolfe gave a lengthy history regarding the titles. In 1888, Mary Crawford sold 100 acres to William Morris that consisted of 50 acres of cleared, cultivatable land and 50 acres of woodlands. The estate of William Morris divided the 50 acres of cleared land into two tracts that were 25 acres each. One 25-acre tract was sold to John Penny in 1891. This piece of property was bounded on the east by property owned by John Gallahan, which would become the Perkins' property. The other 25-acre tract was sold to Madison Earnest in 1918.

In the Fowler chain of title, Madison Earnest sold 25 acres of cleared, cultivatable land to Lovic N. Mills. Mills sold 5 tracts of land to Fowler in 1962. The 1962 sale included a map that was attached to the recorded instrument. Mr. Wolfe testified that this map was not an authentic survey because it was not signed or dated by a surveyor. While the map did include acreage for tract one, it did not include acreage for tracts two and five.

Mr. Wolfe testified that tract two was described in the deed as including two tracts of land – one that was 50 acres and the other was 25 acres. This 25 acres of land was described as being the land in the sale from Madison Earnest to Lovic Mills. However, the 25 acres are shown in tract one on the map. Wolfe testified that, in his opinion, it was the parties' intention to sell the five tracts as described in the deed rather than what is shown on the map.

6

Regarding the Perkins title, Mr. Wolfe stated that the Gallahan property was eventually sold to Ben Rougeau. Christie Phillips, owner of Abstracting and Legal Research, Inc., testified that, in 1968, the heirs of Ben Rougeau transferred the property to Louis Scarbrock. Louis Scarbrock and Daisy Rougeau Scarbrock are Mr. Perkins' in-laws. After Louis' death, Daisy Scarbrock sold the property to the Perkins in 1974.

When comparing the two titles, Mr. Wolfe testified:

[M]y concern was – was identifying the 19.9 acres that Perkins claimed and also that Mr. Fowler claimed. And that's the reason I went down both chains of title because when I was first introduced to this it was believed that possibly they had a common claim to this property that maybe the titles said the same thing. But after I went through it I realized that Perkins' chain went to the 19.9 acres and Mr. Fowler's – this compilation map, I think, is incorrect that it clearly puts it over to the west side where that – where it's denoted house and the yellow on this compilation map.

Mr. Wolfe ultimately concluded that the 19.9 acres at issue is not the same tract of land that William Morris sold to Madison Earnest. Rather, it is the same piece of land referenced as the John Gallahan property.

John Chop also testified. He farms 122 acres of land owned by the Perkins. Mr. Chop was shown an aerial photograph of the area, and he stated that he farms the 19.9 acres of land at issue in this case. He has farmed the land since 2008 and continues to farm the land. He testified that he pays Mr. Perkins directly for the right to farm. When asked, he further testified that Mr. Fowler hadn't farmed the land in his lifetime. Mr. Chop was aged 43 at the time of trial.

Kenneth "Pete" Thomas also testified regarding the 19.9-acre tract of land. Mr. Thomas testified that he rented around two hundred acres from Daisy Scarbrock for farming between 1975 and 1985. He stated that he also "did leveling, did ditching," and he cleared the 19.9-acres at issue in this case. Mr.

Thomas referred to it as the "20-acre tract." After the land was cleared, he began to farm it as well.

James Perkins testified that he has leased to numerous farmers since 1977. He further testified that the land has been assessed in the Perkins' name and that they have paid taxes on the land at issue every year. He has granted several oil leases on the 19.9-acre tract as well.

In the present case, the trial court found in written reasons:

[T]hat Perkins has had physical and corporeal possession of the land in question since the date he acquired it from his ancestor in title, Daisy Rougeau. This land has been farmed by Perkins, rented for oil, gas, and mineral royalties, cleared, and additionally, Perkins has payed (sic) taxes in his name through the Tax Assessor's Office. The supporting testimony given by the farmers who actually farmed the land, as well as the witness, Pete Thomas, who testified that he cleared the 19-acre tract of land in 1977 for Perkins's ancestor in title, supports the physical possession of Perkins for over a vast period of time. The only physical presence that Fowler contends to be had on the land as owner is the placement of cows. He further stated through testimony that he had not paid any taxes on the land, and furthermore that he was unaware of who had been farming the tract of land.

There is a clear distinction made between the trace in titles of the two parties. It becomes evident that the sale from Lovic N. Mills who sold the five tracts of land to Folwer (sic) does not clearly include the disputed tract of land. In fact, it is the uncertified map which is not dated nor signed that signifies that this tract of land was included in the sale to Fowler. This representation of the five tracts of land does not correctly signify the five tracts of land as specifically described in the deed.

The trial court's judgment concluded, based on these written reasons, that the 19.9-acre tract is owned by the Perkins. Based on the record before us, we cannot say that the trial court was clearly wrong in finding the Perkins the owners of the 19.9-acre tract of land. This assignment is without merit.

In his petition, Perkins claimed ownership of a 7.5-foot strip of land that overlaps a 32-foot strip of land, believing this set the boundary line of his 10.2-acre tract of land. The trial court set the boundary lines as specified in Matthew Phillips' survey dated September 1, 2014, and revised September 11, 2014. This boundary placed Perkins as the owner of the 7.5-foot strip.

Mr. Perkins testified that he and his wife built a family home on 10.2 acres in 1963, after the property was transferred to him from his mother-in-law, Daisy Scarbrock. He further testified that he understood a barbed wire fence line to be the boundary of his property. In the mid-1960s, Mr. Perkins stated that he built a chain link fence along the canal; however, he attested that he has continuously maintained the property between the chain link fence and the barbed wire fence by mowing and bush hogging the area in question.

The judgment referenced a survey performed by Matthew Phillips. Mr. Phillips earned a bachelors of science in biology with an emphasis in pre-med and a masters of science in forestry. He is the owner of Lodestone, L.L.C. where he works as a land surveyor. He testified that when performing the survey of the disputed tract, he used a previous survey referenced as the Sandifer Survey because it used monuments at each corner which helped him determine the boundary line. He also testified that, when he physically inspected the property, the barbed wire fence had decayed giving way to an overgrowth of trees; however, he found pieces of barbed wire in the trees that now grew in place of the fence. This evidence coupled with a reference to a barbed wire fence in yet another survey, the Homer Harris survey completed in 1940, led Mr. Phillips to conclude that the 7.5-foot

portion of land overlapping the 32-foot strip is part of the 10.2-acre tract of land owned by the Perkins.

Jared Couvillion testified as Mr. Fowler's expert surveyor. It was his opinion that the strip of land belonged to Mr. Fowler. Mr. Couvillion utilized a 1918 survey done by W.H. Sylvester in making this determination. The trial court discussed both the Phillips' survey and the Couvillion survey in its ruling. The trial court stated:

> In regards to the 32- foot strip of land, the court relies on the expert opinion of Matt Phillips who testified to the 32-foot strip being a part of the 10.2-acre tract of land which is owned by Perkins. Phillips was able to point out the inaccuracies of the Couvillion survey which suggested that the 32-foot strip in fact belonged to Fowler. The survey in which Couvillion used as a reference does not accurately reflect the legal description for which the mortgage description calls for. Perkins has possessed this 32-foot strip of land for well over 70 plus years. The fence which includes this strip of land is the same boundary mark which has been used by Perkins since the date he purchased and acquired said property.

Based on the law and the evidence before us, we cannot say that the trial court was clearly wrong in determining that the Perkins' are the owners of the 7.5 strip of land at issue. This assignment has no merit.

## CONCLUSION

The judgment of the trial court is affirmed. All costs of this appeal are assessed to Andrew J. Fowler and The Unopened Succession of Blanche Deramus Fowler.

**AFFIRMED.**